May it please the court. Richard Plato was denied his constitutional rights in two significant ways by an instruction that the trial court gave to the defense counsel. In the conspiracy count, at the conclusion of all the evidence, the judge acquitted on a rule 29 motion the other person charged with conspiracy, his co-defendant, Mr. Walker. And then the judge, in response to a motion in limine for the government, tells the defense counsel, you may not argue anything about conspiracy, not even mention it as not being here. What that... In response, hadn't the government, the specific motion was, by the government as I understand it, was that they couldn't make an argument that he couldn't be guilty of a conspiracy because Walker was dismissed. In other words, the government's motion didn't say you can't be guilty of conspiracy with respect to... You can't argue that with respect to other conspirators alleged or unknown. I thought it related just to the fact that Walker was dismissed. That's correct, Judge, but that's not the way the trial judge apparently interpreted it, and more importantly, that's not what he said. And I have to be honest with you. I think what this court's going to have to do is determine whether the trial judge said what he meant or meant what he said. And our position is that he meant what he said, which is borne out by the fact that the defense counsel makes an inquiry about what he can and cannot do based on a ruling on the motion in limine, and this response, you may not argue anything about conspiracy. And Mr. Cogdell, the trial defense counsel, followed that order. He did not argue about the conspiracy with this company, and the proof of that is when Mr. Cogdell, in the full hour-long argument that he gave, goes over the elements of all the offenses other than the conspiracy count. There were seven mail fraud counts and two securities fraud counts. He goes into the affected every count in the indictment because this was charged under—all the substantive counts were charged under aiding and abetting as well. All of the contact with the note holders in this case was done by Mr. Walker, the person who was acquitted under Rule 29. So the criminal liability for Mr. Plato was on an aiding and abetting theory. And if he was—he, Mr.—the trial defense counsel was prohibited from arguing that Mr. Plato could have conspired with Mr. Walker, it affected all of the accounts, not just the conspiracy counts. And because Mr. Plato's lawyer was denied the right to rebut the opening statement of the government that started this way, Ladies and gentlemen, this case is about two men, the defendants, Mr. Plato and Mr. Walker, and these two bamboozled the note holders. That's how it started. These two. Mr. Plato's lawyer was not allowed to rebut that opening statement, and he was not allowed to put in any—in his We can tell what the defense counsel interpreted, and we think that it's really clear what the judge meant, and he meant what he said. What's the harm? The harm could be that the jury heard evidence that Mr. Wagner had pleaded guilty and become a government witness. This is the unnamed co-conspirator that the government, in our view, used as a substitute for Mr. Walker after Mr. Walker got acquitted by Rule 29. And the jury knew that Wagner, at the time of the final argument, knew that Wagner was the so-called co-conspirator and wasn't in the indictment and had pleaded guilty. Now all of a sudden, Walker's not in the indictment. He's redacted from the indictment that goes to the jury, and he's not mentioned at all. So it's a logical conclusion that the jury could have reached the understanding that Walker pleaded guilty just like Wagner did, and therefore Mr. Plato had to be guilty if these other two guys pleaded guilty. That's the harm here. And we want to point out that the government does not even address the issue that these are constitutional rights to present a defense of theory and to be represented by effective assistance of counsel. That's why we're starting the argument with this issue, Your Honor, is because it is a constitutional dimension argument, which requires this court to be convinced that it's harmless beyond a reasonable doubt. The government doesn't even acknowledge that in their brief. So but for the granting and part of the motion in limine, what would the defense attorney have said in connection with Walker? That Mr. Plato didn't conspire with anyone, Your Honor. That would be the defense of theory. He didn't conspire with anyone. He didn't conspire with Walker. He didn't conspire with Wagner. And then he would address the elements that have to be. So that's several things. One is he would have said he didn't conspire with anyone. You're saying he was precluded from saying that? That's the way he interpreted it. It says you at page 228, 65, 66, the judge says you may not argue anything about conspiracy. Then counsel goes on, defense counsel goes on to say, to be clear, Your Honor, you are precluding me from arguing that it is unlikely or impossible for Plato to have engaged in a conspiracy with Mr. Walker. He didn't say to be clear that you can't, I can't argue anything about Mr. Walker or anyone else. It just says he's agreeing, and this is defense counsel, to make it clear, you're precluding me from bringing this up about Mr. Walker. Now, here you're telling us that the defense counsel rightfully construed that as a prohibition against him arguing anything about conspiracy, not just about with Mr. Walker, but with anybody else. That's right, Judge, and that's borne out by what happened in the argument by defense counsel. Your . . . I know. What you're saying, what it seems to me is that, what you're saying is, what it appears to me is that's not what the judge said, but to prove that you think that that's what the judge says, you rely on how the defense attorney misinterpreted what the judge says to prove that the judge said something else. Well, in all candor, Judge, the judge should have said, in my opinion, to make it clear, the judge should have said, you may not argue that Mr. Plato is not guilty of conspiring with Mr. Walker because I found Mr. Walker not guilty on the Rule 29 motion. That would be an improper argument. We concede that. That's not what the judge said, though. I mean . . . That was the government's motion, and before it, the court says, granted you may not argue anything about conspiracy, not even mention him not being here, which that reference to him is obviously a reference to Mr. Walker. It is, and, of course, the government takes the position that that reference was not him, was not here in the courtroom, but in an indictment, and we're suggesting that that's . . . We leave it up to your honors to decide what, whether the judge said what he meant . . . No, I agree with you that the court could have been a little bit clearer, but I also . . . Yes. I'm not too sure the defense counsel properly understood the ruling of the judge. That may be correct, Judge, but here's the import to the case. Mr. Plato's constitutional rights to have his lawyer argue a defensive theory and to have effective assistance of counsel were denied because of that confusion, if you will, on what the judge meant. To him, it wasn't unclear because he didn't argue that there wasn't a conspiracy with anybody. He didn't even go over the elements of the count, count one, the conspiracy. He didn't even go . . . They went over the elements for everything else. At any rate, we believe that the government can't show that this error is harmless beyond a reasonable doubt, and it's important, and it affects all the counts. And I'll leave this issue with one point that I wanted to make that's in the government's brief. The government claims that this Mr. Wagner, the unnamed co-conspirator, said that he conspired with Plato to defraud MPC investors. If you look at the citation to the record of trial at 2914 where that is given as the argument, and you go back and you read Wagner's testimony, he never says that he conspired with Mr. Plato to defraud MPC investors. That's not in the record except in the point of argument by the government. So what did Mr. Wagner testify to? Mr. Wagner said he was greedy. He didn't say, I conspired, but did he testify about transactions between the two? He did judge, and I don't intend to use limited time unless the court wants me to on the issue of the extrinsic offense point that we have later in our brief, but he talked about, he, Wagner, talked about committing tax fraud, mail fraud, three or four different types of offenses with which Mr. Plato was not charged. And he had to deal with the government. He was facing 73 years in prison, and he got a two-year probated sentence for his testimony. So I hope that answers your question. And what was his position in the company? He was the accountant, Your Honor. Accountant. And what was Mr. Plato's position? He was the CEO and the president. So you had the accountant testifying about the company and his involvement with the CEO. Yes, sir. And if I may now move to the sentencing issue, I believe that just so that we're all on the same page here, the trial court added two levels for an abusive position of trust, and we believe this is contested between the parties. We believe the standard of review about whether a person's in a position of trust or not is to be reviewed de novo by this court, and we rely on case. A 2007 case out of this court for that. And if this court finds that Mr. Plato was not in a position of trust with the note holders, the inquiry stops. Versus that that set very clearly set out in Allison from this court in the back as long ago as 1993. No adjustment is to be given if the court determines that this is our issue number six, Your Honor, that if there's no position of trust, then that adjustment is not given. We believe that in this case, your analysis should stop at that question, because the relationship between Mr. Plato and the note holders was one of borrower-lender, and we rely on Wright from this case, this court in 2007, which cited Jolly from the Second Circuit, and we point out that the funds lent by the note holders, as in Jolly, bore none of the characteristics of money put in trust. The Jolly court held that that defendant there was just the president of a company seeking capital. That's what Mr. Plato was doing. He was seeking capital for his oil production company. He was not serving as an investment advisor. Therefore, there was no position of trust. He was a borrower-lender. And if he had not, if the judge had not added those two levels, it would have changed the guideline range by two levels. And the loss amount is also incorrect. We have a disagreement with the government on the standard review on that, too, we believe. But this court stated in Harris, out of this court in 2010, that the standard review is as it relates to how the trial court calculated the loss. That's a question of law to be reviewed de novo. And what's wrong? In this case, the trial court did not deduct anything for the collateral which was pledged in each of these notes. The notes provided that collateral, any collateral that MPC, Momentum Production Company, could serve as collateral for any other note. And the defense submitted a tax appraisal printed in 2011, as of 2011, for the end of 2010, which showed a little over a million dollars for the MPC properties in Stark County. Trial court did not take any of that and deduct any of that value at all. It just didn't do that. So we rely on Goss, out of this court, that he should have. Now, the guidelines technically say at the time of sentencing, but the case law in this court says if you don't have something that tells you exactly what the property, a real property is worth at the time of sentencing, you use your best estimate that your trial judge can. And we suggest to this court that that tax appraisal by Stark County tax appraiser is the most reasonable estimate at that time. And we have the government takes a position that MPC and Momentum Production somehow are not the same company. They are the same company. And if you look at record, by the way, the time for all 20 minutes. No, I think you saved some five minutes for rebuttal. So you still have five minutes left. May I go one more minute on this, sir? You can, but you'll take it away from your rebuttal. Right, yes. Let me just complete this argument. The appraised value is different from production value. The government takes a position that they went and the fields were not producing anything at the time of sentencing, which is true because Mr. Plato was arrested in 2011 and nobody was operating those fields. But that doesn't mean they weren't worth what the tax appraiser said they were. And it should have been deleted. What would have happened then is that if you agree with us on both of these, we move from 235 months to 293 months, which is what the trial judge used, he sentenced at the lower end, would have moved it down to 151 and 188 months range. Considerable difference. So we're not dealing with things that are not significant. And lastly, we would remind the court of what Harris said, that if the trial judge sentenced at the low end of the incorrect range, it is logical on remand to assume that he was sentenced at the low end of the correct range. And I'll save the rest of my time if possible for the rebuttal. Mr. Teddy? Good morning, Your Honors, and may it please the court. John Taddy from the United States. Mr. Plato raises numerous challenges to his convictions for mail fraud and conspiracy to commit mail fraud, as well as a sentence. I'll address them in the order that Mr. Plato's counsel just addressed them in his opening argument. First, on the motion in Lemonet, the judges were asking a few questions about the progression from the motion in Lemonet to the decision by the district court to what the instruction actually was. If we look in the context of how this proceeded before the district court, what happened is that the close of evidence, Mr. Walker, the named co-conspirator of the indictment, moved under Rule 29 for dismissal. That motion was granted. Then the government requested a motion in Lemonet in order to prevent Mr. Plato from potentially making an argument. And it's, in fact, an argument that's made in this brief that simply because Mr. Walker was dismissed from the indictment that there could not be a conviction on the conspiracy count. Now, under the law of this circuit, that's improper because in the indictment, the government alleged that not only did Mr. Plato conspire with Mr. Walker, but also individuals named and unnamed in the indictment. And it's inaccurate for Mr. Plato's counsel to ascribe the government's argument solely as one throughout trial that Mr. Walker was the only co-conspirator. Was it the theory of the case that he conspired with Mr. Wagner, even though Mr. Wagner was not part of the indictment? Yes, Your Honor. It was the theory of the case that Mr. Wagner, as well as Mr. Walker, were co-conspirators. And, in fact, it was the government's theory in opening. I would invite the court to consider record pages 490 through 492. I can't hear that fast, counsel. I'm sorry, Your Honor. I'll slow down. It was in the opening on record pages 490 and 492 where it talked about how Mr. Wagner was the accountant of the company and how the two individuals worked together not only to create the promissory notes. They met day to day in order to discuss the finances of the company and that Mr. Wagner would be testifying about his involvement in the conspiracy. It happened during trial, during Mr. Wagner's own testimony. And this is another inaccuracy that was brought up during opening argument. Wagner, on record page 744, and this is in our brief on page 26, admitted that he, quote, in the mail fraud scheme that Mr. Plato was engaged in. And under this court's precedent in United States v. ISCAR, the admissions of a co-conspirator that he was involved in a conspiracy are sufficient to support a conviction on the conspiracy count. So it's inaccurate to say that Mr. Wagner did not admit to a conspiracy and that this was not an argument that was pursued by the government during trial. That statement of law, that admission by a co-conspirator, is that limited to a named co-conspirator or it doesn't make any difference? It could be an unnamed co-conspirator? No, Your Honor. It can be an unnamed co-conspirator. And I would invite this court to consider its decisions in United States v. Rains, United States v. Thomas, and United States v. Lance, dating back all the way to 1976. Getting back to the specific issue on the motion in Lemonet, it's apparent, and I think some of the panel's questions were getting to this, that either defense counsel may have taken this instruction out of context, but it doesn't even appear apparent based on the context. This was an instruction that specifically addressed Mr. Walker and his dismissal from the case. It was not an instruction not to argue conspiracy whatsoever, and this was borne out in the parties on arguments during closing argument. The government addressed the conspiracy count on record page 2914 and stated that there was a conspiracy, that Mr. Wagner was the co-conspirator, and it did not draw a rebuke from the district court or any sort of a comment from defense counsel. Now, if the instruction had properly been no conspiracy can be discussed whatsoever, it likely would have drawn some sort of rebuke from the district court. There was no rebuke to this statement that conspiracy was discussed during the government's argument. Then in response, during defense counsel's argument, defense counsel also addressed conspiracy, and I would invite the court to consider our brief on page 42, as well as record pages 2933 and 34, where they talked about whether it's more likely to believe that Mr. Wagner truly believed in the success of this company or whether the two individuals were involved in some grand conspiracy. That's a defense counsel argument? Yes, defense counsel argument. You don't agree with counsel's assertion that the proof in his perception of what the judge had ruled is borne out by the fact that he never mentioned conspiracy? No, Your Honor, because he did mention conspiracy, and he mentioned conspiracy on pages 2933 and 34. Now, one more point on this instruction. The Supreme Court has held in Herring v. New York that a district court has great latitude in limiting the scope of closing argument, and that's exactly what happened here. This individual had been dismissed from the case. The district court indicated that it was going to give the jury a proper instruction that Mr. Walker is no longer in the case. Now, if the court had said anything more explicitly on this issue, for example, had told the jury Mr. Walker is no longer in this case because I didn't find that there was sufficient evidence to convict him of conspiracy, that would have resulted in even greater prejudice to Mr. Plato, because that would have been an indication to the jury that the court believed that there was insufficient evidence as to one defendant, but that another defendant was still in the case because it believed that a Rule 29 motion was improper. So the district court really issued what was the proper course of action here, which is that the parties couldn't address Walker and that they could only address the other potential conspirators in the case, i.e. Mr. Wagner. Moving on to Mr. Plato's second argument regarding the abuse of trust enhancement, Mr. Zimmerman wants to argue that it's de novo review. However, I would invite the court to consider the very case that he claims for support, which is United States v. Wright. It's cited in our brief, which explicitly states that abuse of trust enhancements are reviewed for clear error only. He was the CEO. Was there evidence that he went out seeking investors? Yes, Your Honor. Personally sought out investors for the company? Yes, Your Honor. Almost as soon as Mr. Plato was released from prison from his three prior fraud convictions. He had three prior convictions? He had three prior convictions. He's a disbarred lawyer? I'm sorry, Your Honor. He's a disbarred lawyer? Yes, Your Honor. Do you know if he's ever attended the Fifth Circuit Bar Association workshop? Whether he has or I have. He has. I'll go back and check the record on that. So following his release from prison for those convictions, he immediately revived Momentum Production Corporation. Mr. Wagner was his tax advisor, and he had this idea of investing in defunct oil wells. And they initially used some money. I'm not sure where they got the capital fund to invest in there, but due to Mr. Plato's self-dealing, the company was quickly in the red. They had very little profit. And then Mr. Wagner and Mr. Plato developed this idea to use promissory notes to raise cash. And it seems that they contacted a tax advisory group that sent out solicitations to potential investors, and they also hired Mr. Walker to use contacts that he had largely in Florida from retirees who were looking for a little bit of a nest egg to invest their funds in. And Mr. Walker was the liaison largely between the company and those investors. So Mr. Plato affirmatively sought out these individuals. And what's important for the consideration of the abuse of trust enhancement, this was a man who had complete and total control over the mechanics of this business. Rebecca Broyles, another employee of the company, testified about how Mr. Plato was the only individual that had check signing authority. Mr. Wagner testified about how Mr. Plato was essentially the one that was in control of the entire business and how he used that authority to write checks to himself, to his wife, to his mistresses, to other personal interests. So this was a man that's not sort of in this amorphous, large-scale lender-buyer argument as Mr. Zimmerman's Rule 28J letter from the D.C. Circuit would indicate. And in addition to that, that case is largely irrelevant. It has to do with the interpretation of the Securities Investor Protection Act in the context of brokerage firm insolvency. It has nothing to do with the United States Sentencing Guidelines or the interpretation of an abuse of trust enhancement. This was a company where you had one man who was the head of the organization soliciting investments from 35 individuals. They were arm's-length deals. He even invited these people to a ranch at one point to see how the, excuse me, to the oil fields, to see how the oil fields were doing. This wasn't some sort of broad-based thing with massive amounts of stockholders. Moving to the argument regarding loss amount, again, Mr. Plato argues that this is supposed to be a de novo standard of review. This is an actual loss, not an intended loss case? Yes, this is an actual loss case, Your Honor. On the issue of the standard of review here, Mr. Plato would be correct that the standard would be de novo if this had to do with the interpretation of the guidelines, meaning whether this property existed in the portfolio of NPC and if it had value, if it should be deducted. The government conceded in its response to Mr. Plato's objections that if indeed this property was owned by Momentum Production Corporation and if it had value, that yes, it should be deducted. The issue was a factual one. The issue was whether or not NPC owned these properties and if they had value, not whether or not the amount should be deducted. And as a result, this is a factual question that should be reviewed. It wasn't a legal question about method of calculation? No, Your Honor. A dispute about calculation? No, Your Honor. You're saying it was a factual question about the amount? Yes. And it was conceded that it would have been deductible? Yes, Your Honor. I would invite the Court to consider District Court Docket Entry 290, which we cite in our brief in which the government responds to Mr. Plato's objections and concedes that if this property did have value, that it should be deducted. Where the controversy lies is whether or not NPC did even own this property and if it had any value. And on the issue of whether or not it owned this property, if you look back and forth at the briefs and the way this was litigated below and this way it was litigated here, Record Episode 13 is the document that Mr. Plato relies on to indicate that NPC owned this property. They concede that in 2007, these properties were sold by Momentum Production Corporation to another organization. And in the government's response to Mr. Plato's objections, we cite the indications that these properties were sold in 2007. Now, in response, he says, okay, we sold them, but we bought them back later on. And Record Episode 13 is the document which proves that we bought them back. Now, if you look at Record Episode 13, and I would invite the Court to consider it carefully, there's no indication that a company called Momentum Production Corporation repurchased these properties. What it is, is it's an assignment and bill of sale between a company called in 2007, and a company called NPC Energy Incorporated. Now, if the Court looks at the promissory notes that are contained in the government excerpts, and if it considers this indication, and even the note that's in the record excerpt, which is the only note that contains the collateral, there's no mention of a company called NPC Energy Incorporated being obligated to pay the debts of Momentum Production Corporation. And in fact, the government wasn't even aware those properties existed until it was mentioned in the response. Nor is there any indication, as the government pointed out in its response, that any party had attempted to civilly recoup losses from this NPC Energy company. Now, Mr. Plato was a sophisticated fraudster. We can see that based on the fact that this is his fourth separate fraud conviction. And it appears apparent that it's just as likely that Momentum Production Corporation didn't know these properties, that Richard Plato bought them back under the corporate name NPC Energy Incorporated in order to insulate them from any potential collection. And therefore, they were not the collateral of Momentum Production Corporation and could not be deducted. So that's one of our arguments as to why it was proper for the District Court not to deduct this value. The second argument is that even if you assume there's some unestablished relationship between NPC Energy and Momentum Production Corporation, the government submitted subsequent evidence which reviewed under clear error the District Court was allowed to consider and to credit that Momentum Production Corporation, or excuse me, that these properties had no value. They indicated that there was no production coming out of these wells. And Mr. Plato argues that it's not as reliable, that it's not as valuable of an estimate. That's an improper consideration before impeller review. Under clear error review, the District Court was privy as being closer to the facts to consider these two documents and to credit one over the other, as to it having no value. Now, Your Honors, unless there are any further questions on any of the other issues that the parties raised, we would concede the remainder of our time. Thank you. Thank you. Mr. Zimmerman. Yes, Your Honor. I have four minutes left here. Thank you, sir. Let me begin with the last comment made. The offer at the court below that there was no production from these wells, I think we've already explained it. It's in our brief, and I mentioned it earlier. There's a difference between not producing, because nobody's operating those fields, and whether those fields have value. And I'm going to leave it at that. They clearly have value. And the estimate that the trial court could have used that was closest in time to the sentencing was the 2011 document that we have at Record Excerpt Number 11 that shows it to be in excess of a million dollars. The trial judge didn't make any finding of fact about who owned or didn't own that property. So that's speculation there. The Record Excerpt 13 shows the actual document. This property was bought and sold between two same parties in 2007, and then they bought it back in 2010. And you can see at the bottom that it says, returned to Momentum Production Corporation at the address from Mr. Plato's company in Baytown, Texas, and it's referred to there. I think that's a red herring, and I just wanted to point that out. With regard to Mr. Plato, I think one of the questions of the court was whether or not he personally had anything to do with marketing these. He did not personally ever. He met with one note holder prior to a note being bought, but they didn't discuss purchasing it, which is a social function in Florida. The only time that he saw the note holders was when there was an organized trip that came back to Corpus Christi so that they could go on a field trip, if you will, to observe the wells that they had invested in. And with regard to them being elderly investors, they weren't very sophisticated. I point out to you that the four that testified, we say this in our brief, four of them had a net worth in excess of a million dollars, one had a net worth in excess of six million dollars, two of them had MBA degrees, one graduated from Harvard and one graduated from Tulane. Not your average, and I say this because I'm 72, elderly investor who's not very sophisticated. I think that that's an incorrect characterization of the people who bought those notes or lent that money via the notes. I think when counsel for the government was arguing that what might be permitted and not permitted with regard to arguing about Mr. Walker, this is our position. The defense counsel should have been able to argue that there was no conspiracy of Mr. Walker because of the facts that there was no intent to defraud. Not that there's no conspiracy with Mr. Walker because the judge acquitted him. That would have been wrong. We all know that, but that's not what the trial counsel interpreted as, and he never argued that there was no conspiracy with Mr. Walker, which he should have been allowed to do. That was the defensive theory. With regard to Mr. Wagner, I think counsel has glommed onto the two times an argument that the word conspiracy was used, and we've got that mentioned in our brief and cited to the record. That was not an argument that Mr. Wagner was not in a conspiracy with Mr. Plato. What he said was, you heard all this testimony, and now the government wants you to have an analogy that there was some unspoken conspiracy with Mr. Wagner. That's not arguing the defensive theory with regard, in our view, that's not a full-blown attack on the conspiracy account that he didn't conspire with anyone because he had no intent to defraud. That is what the defensive theory was. No intent to defraud those note holders, that they were just lending capital to the company. I see my red light is on, and I know that I'm supposed to sit down, and so I'm going to follow the rules, and I'm going to sit down. Thank you. Sit down, or I'll push that button that shoots you down to the bottom floor. Yes, right. I don't want to be boomed down instead of boomed up. Thank you. We'll take a short recess.